Amaryllis Figueroa,

                    Plaintiff,

     v.

Commissioner of Social Security,

                    Defendant.

**Decision and Order**

18-CV-6633 HBS
(Consent)

## I.   INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 6, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 9, 16.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Supplemental Security Income under Title XVI of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II.   DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other

kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e).

3

The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Of the various issues that plaintiff has raised, the one that draws the Court's immediate attention concerns the ALJ's consideration of treating psychiatrist Dr. Katherine Duffy. The ALJ found that plaintiff had the severe impairments of migraine headaches; chronic fatigue; type II diabetes; depression; bipolar disorder; panic disorder; PTSD; and trauma and stressor related disorder. [23.] The ALJ proceeded to find that plaintiff had the RFC for work at all exertional levels but with a list of nonexertional limitations: "avoid concentrated exposure to environments with bright lights, including sunshine; limited to working in an environment with no more than a moderate noise level of moderate as defined in the Selected Characteristics of Occupations; understand, remember, and carry out simple instructions and tasks; occasionally interact with co-workers and supervisors; little to no contact with the general public; able to work in a low stress work environment (i.e. no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine and processes, etc.); and able to consistently maintain concentration and focus for up to two hours at a time." [25.] Among the records that the ALJ reviewed to arrive at the RFC were clinical records from Rochester Mental Health Center, where plaintiff saw Dr. Duffy and a licensed mental health counselor over a number of visits. Although Dr. Duffy completed a medical source statement on March 19, 2018, the ALJ gave "only some weight" to the opinion based on inconsistencies elsewhere in the record. This is the paragraph in the ALJ's decision, reprinted here in full, in which the ALJ assesses Dr. Duffy as a treating source:

> Therapist Donato and psychiatrist Dr. Duffy completed a medical source statement on March 19, 2018 (Ex. 14 F). It was noted she had re-engaged in treatment in October 2017 and was taking Citalopram and Quelapine (Ex. 14F, p. 2). They opined the claimant could not engage in fulltime competitive employment because of her "engagement in school" and because she was a "single parent of 7 children" (Ex. 14F, p. 2). However, they stated the claimant's mental health

> precludes all performance in the ability to carry out very short and simple instructions (Ex. 14F, p. 4). As well as other significant limitations in sustained concentration and memory. This is contrary to her own reports that she was doing well in school and able to care for her seven children with limited support. It is also inconsistent with her reported daily activities at the time of her application (Ex. 1E). Despite no mental status exams from a treating source ever identifying a problem with attention and concentration, it was opined she would be off task 30% of the workday (Ex. 14F, p. 5). The level of impairment in the ability to concentrate, persist or maintain pace was rated as extreme. This is also again inconsistent with her ability to attend school for five hours a day. In the area of adapt and manage oneself, the level of impairment was opined to be marked, despite her reported ability to care for her seven children, prepare meals, do laundry, clean and shop. Due to the inconsistencies with the mental status exams and the claimant's own self-reports of good daily activities, only some weight is accorded to this opinion. As noted, the claimant failed to show up to four appointments just prior to this form being completed. Further, the rational that she was unable to work because of her schooling and parent responsibilities is not reliant on her mental health impairments.

[28.]

The above paragraph makes obvious that the problem that drew the Court's attention is not (yet) substantive but rather procedural. "Social Security Administration regulations, as well as our precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion. First, the ALJ must decide whether the opinion is entitled to controlling weight." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "According to this [treating physician] rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation and editorial marks and citations omitted). "Otherwise, the ALJ must proceed to step two and determine how much weight, if any, to give the opinion. At step two, the ALJ must explicitly consider the following factors derived from our decision in [*Burgess*]: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the

5

consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. At both steps one and two, the ALJ must give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion. Moreover, the failure to explicitly apply the *Burgess* factors when assigning weight at step two is a procedural error, and unless the ALJ has otherwise provided good reasons for its weight assignment, we will be unable to conclude that the error was harmless and will consequently remand for the ALJ to comprehensively set forth its reasons. If, however, a searching review of the record assures us that the substance of the treating physician rule was not traversed, we will affirm." *Ferraro v. Saul*, ___ Fed. Appx. ___, No. 18-3684, 2020 WL 1189399, at *1 (2d Cir. Mar. 12, 2020) (summary order) (internal quotation and editorial marks and citations omitted). The ALJ here assessed Dr. Duffy in ways nearly identical to the ways that the Second Circuit considered deficient just days ago in *Ferraro*. The ALJ did not explicitly consider the frequency, length, nature, and extent of treatment that either Dr. Duffy herself or her office as a unit provided to plaintiff. The ALJ did not consider Dr. Duffy's qualifications as a specialist. As for amount of evidence and consistency, the ALJ did not give "good reasons" for the apparent decision that doing well in school and taking care of children are mutually exclusive of being "at moderate risk for suicide, low risk for violence" [325] based on "her history of psychiatric and chemical dependency treatment, drug use, trauma history, legal history, and school and employment history" [326]. As the Second Circuit implied in *Ferraro*, the Court will not rule out the possibility that the current RFC can be justified with a more thorough explanation. For now, the Court is only respecting the Second Circuit's repeated procedural mandate that the *Burgess* factors must be addressed explicitly.

    The Court declines to address any other issues that the parties have raised. Upon remand, the Commissioner is free to address any other issues as might be appropriate.

6

## III. CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 16). The Court grants plaintiff's cross-motion (Dkt. No. 9) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order. The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

　　　　　　　　　　　　　　　　　　__/s Hugh B. Scott_____
　　　　　　　　　　　　　　　　　　Hon. Hugh B. Scott
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

DATED: March 16, 2020